928 F.2d 1134
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert S. VINCENT, Appellant,
v.
THE READERS'S DIGEST ASSOCIATION, INC. Reader's Digest Sales
and Service, Inc., Appellees.
 Nos. 89-2434, 90-1063.
 United States Court of Appeals, Sixth Circuit.
 March 27, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, 88-70715, Freidman, J.
 
 
 1
 E.D.Mich.
 
 
 2
 AFFIRMED.
 
 OPINION
 
 3
 Before DAVID A. NELSON, Circuit Judge; WELLFORD, Senior Circuit Judge; and MEREDITH, District Judge.*
 
 
 4
 PER CURIAM.
 
 
 5
 This appeal from the United States District Court For The Eastern District of Michigan requires us to determine whether it was proper for the District Court to grant summary judgment to the Appellees. For the reasons set forth infra, we determine that the granting of summary judgment was proper. Accordingly, we affirm.
 
 
 6
 The relevant facts are not in dispute. Appellant Robert Vincent ("Vincent") was a long time employee of the Appellees ("Reader's Digest") in the position of advertising salesman. In 1981, Vincent was promoted from sales to the position of Advertising Sales Manager for the Detroit, Michigan office. In January of 1985, Vincent was discharged from his position.
 
 
 7
 R.F. Mclaughlin and Lynn Mapes, two of Vincent's superiors at Reader's Digest, testified about a meeting with Vincent four to six months before termination, at which Vincent conceded persistent problems with salespersons under his supervision were discussed. It is apparently undisputed that Mapes directed Vincent to come to this meeting in New York to talk about problems involving Vincent. McLaughlin and Mapes recalled that the purpose was to discuss continuing dissatisfaction with Vincent's performance as Detroit manager--his drinking, morale problems, and training deficiencies. McLaughlin recalled Vincent's being told he was in "trouble" or "deep trouble." J/A 271, 277. Vincent recalled specifically only dissatisfaction with his handling of two sales employees and that it was "possible" they talked about a drinking problem. J/A 346. Vincent did admit that McLaughlin and Mapes discussed with him separately, during 1983 and 1984, his perceived drinking problem. There is a substantial question, then, as to whether Vincent was discharged for cause, and whether he had notice of his employer's dissatisfaction with his performance.
 
 
 8
 Following his termination, Vincent filed this suit[1] alleging that his dismissal was in violation of an implied "just cause" employment contract between himself and Reader's Digest.[2] Reader's Digest argued that in 1983 it had unilaterally amended its employment practices from "for cause" to "at will." Such a unilateral change of employment practices, from "for cause" to "at will," is permissible under Michigan law as long as "reasonable notice of the change (is) uniformly given to affected employees." In re Certified Question, 432 Mich. 438, 457, 443 N.W.2d 112, ---- (1989). In support of its position, Reader's Digest noted that the employee handbook, which was distributed to all employees, contained the following statement:
 
 
 9
 We recognize that you have the right to terminate your employment whenever you choose for any reason or no reason. The company reserves to itself the same right.
 
 
 10
 Employee Handbook at E4. Furthermore, the Reader's Digest Personnel Policy And Procedure Manual, which was distributed to "every department manager or supervisor," contained the following:
 
 
 11
 There are no Reader's Digest employee/employment (sic) contracts and, therefore, either is free to separate from the other at any time.
 
 
 12
 Manual at 4. On November 6, 1989, relying on both of these statements, the District Court found that Reader's Digest had provided reasonable notice in a uniform manner to all affected employees of its intention to unilaterally amend its policies. Accordingly, the District Court found that Reader's Digest was entitled to summary judgment. Vincent now appeals from that decision.
 
 
 13
 The standard of review for an appeal from a grant of summary judgment is the same standard as that applied by the federal District Courts. See, e.g., Crippen v. Kheder, 741 F.2d 102, 104 (6th Cir.1984). Furthermore, in applying that standard, we must view the facts in a light most favorable to the non-moving party. Aetna Insurance Co. v. Loveland Gas & Electric Co., 369 F.2d 648 (6th Cir.1966). The United States Supreme Court, in the landmark 1986 trilogy of Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al, 475 U.S. 574 (1986), clarified the standard upon which a United States District Court must adhere in analyzing a motion for summary judgment. The Supreme Court stated:
 
 
 14
 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.
 
 
 15
 Celotex, 477 U.S. at 322-23. Applying this standard to the present case, we must determine if there is a genuine issue of a material fact regarding the question of whether, as a matter of Michigan law, the statements in the handbook and in the manual met the requirements for unilateral amendment of employment policies specified by In re Certified Question. If we find that there is not a genuine issue of material fact, then we will be forced to conclude that Reader's Digest properly amended its employment practices to reflect an "at will" policy.
 
 
 16
 As an initial matter, we deal with the question of whether Vincent received "reasonable notice." Although it is unclear whether Vincent actually ever read or was aware of the provisions of the handbook or the manual, we note substantial support for the District Court's conclusion that, as a matter of Michigan law, he had "reasonable notice" of the changes. The Michigan Court of Appeals has made it clear that the "reasonable notice" requirement of In re Certified Question does not mean actual notice. Grow v. General Products, Inc., No. 107619 (Mich.App.1990).[3] As to whether Vincent received reasonable notice of the new "at will" policy set out in the revised Reader's Digest handbook, he conceded in his deposition that he received a copy of that handbook. He also conceded that he assumed that this handbook[4] contained pertinent employment policies. Under these circumstances, Vincent may be deemed to be award of the handbook contents. See Pratt, supra, and Dell v. Montgomery Ward & Co., 815 F.2d 970 (6th Cir.1987).
 
 
 17
 Since the "reasonable notice" requirement was met by both statements, we now turn to the question of whether the uniform distribution requirement was met. It is clear that the handbook statement ("We recognize that you have the right to terminate your employment whenever you choose for any reason or no reason. The company reserves to itself the same right.") was uniformly distributed to all employees. However, upon review of the record, it is clear that the Manual statement ("There are no Reader's Digest employee/employment (sic) contracts and, therefore, either is free to separate from the other at any time.") was not uniformly distributed to all employees as required by In re Certified Question.[5] Accordingly, the Manual statement cannot be the basis for the amendment of the employment policy.
 
 
 18
 Having concluded that the Manual statement cannot be the basis for the amendment of the employment procedures, we must determine if the handbook statement, by itself, is sufficient to constitute an amendment of the employment contract. Although we feel that the wording could be more clear, we are satisfied that the words, "We recognize that you have the right to terminate your employment whenever you choose for any reason or no reason. The company reserves to itself the same right," do convey a policy of "at will" employment. A reasonable employee, upon reading the statement, would realize that the company could terminate his/her employment at any time for any reason. Accordingly, we hold that the handbook statement, by itself, was sufficient to constitute reasonable notice of Reader's Digest's amendment of its employment policies and, therefore, that Reader's Digest could terminate Vincent "at will."
 
 
 19
 Since Reader's Digest, as a matter of Michigan law, had amended its policies, we find that there was no genuine issue of material fact. Accordingly, we hold that the District Court's entry of summary judgment was proper. Therefore, the judgment of the United States District Court for the Eastern District of Michigan is AFFIRMED.
 
 
 20
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 21
 In granting the defendant employer's motion for summary judgment the district court did not find that the employer had good cause for discharging plaintiff Vincent. The district court was right, I believe, not to grant summary judgment on that ground; good cause may well have existed, but the record before us demonstrates the existence of genuine issues of material fact that would have made it inappropriate for the court to decide the good cause question in summary judgment proceedings. If the judgment is to be affirmed, as my colleagues have recognized, it must be affirmed on the ground that there is no genuine issue as to the fact that the employer's switch from a discharge-for-cause policy to an employment-at-will policy was accompanied by the "reasonable notice" required under Michigan law.
 
 
 22
 My colleagues are prepared to affirm on that basis now, despite the district court's mistaken belief that both of the policy statements on which the court relied were contained in a handbook distributed to all employees. It seems to me that the better course would be to remand the case to let the district court determine, if possible, whether the "Personnel Policy and Procedure Manual" containing the second of the two policy statements cited by the court was distributed to a class of employees that included the plaintiff--and, if the manual was not so distributed, to determine whether the handbook alone was sufficient to constitute "reasonable notice" as that phrase is understood by Michigan judges.
 
 
 23
 Although the two policy statements may be similar in content, the statement in the manual was given far more prominence than the statement in the handbook. The manual has a capitalized and underscored heading at the top of page four advising the reader that this page deals with the subject of "SEPARATION." The text that follows is clearly divided into two sections, one headed "POLICY" and the other headed "PROCEDURE." The policy section occupies the first half of page four of the manual. It concludes with a separate paragraph, conspicuously set off from the rest of the text, reading as follows:
 
 
 24
 "There are no Reader's Digest employee/employment contracts and, therefore, either [the employee or the employer, presumably] is free to separate from the other at any time."
 
 
 25
 The corresponding statement in the handbook is found at the 27th page of a publication some 135 pages in length. The page in question is in a section captioned "FACTORS THAT DETERMINE YOUR SALARY LEVEL AND YOUR PROGRESS." Toward the end of this section--which is printed in smaller type than the manual--is a four-paragraph subsection with the catchline "Separation Interview." The text of the "Separation Interview" subsection reads as follows:
 
 
 26
 "We recognize that you have the right to terminate your employment whenever you choose for any reason or no reason. The company reserves to itself the same right. If you resign from the company, we request that you give your supervisor written notice of your decision at least two weeks prior to your departure date.
 
 
 27
 All employees who leave the Digest, whether separating from the company for voluntary or involuntary reasons, are asked to visit the Personnel Department for a Separation Interview. Your opinions are of value to the company as a means of evaluating benefits, promoting employee satisfaction, improving employee relations and reviewing company policies and practices to make certain they are current, relevant and effective. You are also asked to return your identification card and other company property you may hold.
 
 
 28
 Your final paycheck is usually given to you at the Separation Interview. The pro-rated portion of your annual bonus and pay for unused vacation will be forwarded within a few weeks of your departure.
 
 
 29
 If you are vested in the Profit Sharing or Pension Plans, please contact the Benefits Department to determine the disposition of those funds."
 
 
 30
 Perhaps the distribution of revised handbooks containing this "Separation Interview" material was adequate to put Reader's Digest employees on notice that the Digest's discharge-for-cause policy had been abandoned in favor of an employment-at-will policy, but I should have been interested in having the district court's thoughts on that question. The Supreme Court of Michigan has told us that "a discharge-for-cause policy announced with flourishes and fanfare at noonday should not be revoked by a pennywhistle trill at midnight." In re Certified Question, 432 Mich. 438, 457, 443 N.W.2d 112, 120 (1989). I am not sure whether this principle of Michigan law governs the case before us, and I should prefer not to decide the question without knowing what the district court, more experienced in Michigan law than I, might think about it.
 
 
 
 *
 The Honorable Ronald E. Meredith, Judge, United States District Court For The Western District of Kentucky sitting by designation
 
 
 [1]
 Suit was originally filed in the Circuit Court for Oakland County, Michigan. Appellees removed the suit to federal court on the basis of diversity. The propriety of the removal is not at issue
 
 
 [2]
 The Michigan Supreme Court had previously held that implied just cause employment contracts were fully enforceable. See Toussaint v. Blue Cross And Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980)
 
 
 [3]
 Although the Michigan Court of Appeals is not Michigan's highest court, its decisions interpreting Michigan law are binding on us when, as here, the Supreme Court has not spoken on the issue
 
 
 [4]
 We agree with the District Court that a later submitted Vincent Affidavit that he did "not specifically recall whether or not (he) received a copy" does not create a genuine issue of material fact
 
 
 [5]
 The District Court mistakenly believed that the manual statement was also in the employee handbook