OPINION
{¶ 1} Plaintiff-appellant, Albert Stewart, Special Administrator of the Estate of Debora Yardley, Deceased ("appellant" or "Stewart") appeals from the August 27, 2001 decision of the Franklin County Court of Common Pleas granting defendants-appellees, West Ohio Conference of the United Methodist Church ("West Ohio Conference") and Columbus North District of the United Methodist Church's ("Columbus North District") motion for summary judgment, and denying Stewart's motion for summary judgment against West Ohio Conference and Columbus North District.[1]
Defendant-appellant, Steven Colliflower ("Colliflower"), filed an appeal in this matter regarding the trial court's May 24, 2002 amended judgment entry awarding appellant compensatory damages in the amount of $373,305.50, punitive damages in the amount of $10 million, plus $130,656.92 in attorney fees.[2] For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Debora A. Yardley ("Yardley") was a parishioner at St. Luke's United Methodist Church ("St. Luke's"). St. Luke's is a local church, located within the Columbus North District and a part of the West Ohio Conference, which was led by Bishop Judith Craig at the time of the alleged incidents. St. Luke's is one of 55 local United Methodist churches located in the northern Franklin County area.
 {¶ 3} In September 1994, Yardley and her son attended a church picnic at St. Luke's. A week later, Yardley attended Sunday service at the church. At service, Yardley filled out a visitor's card requesting a home visit. Colliflower, who at that time was a pastor of the church, telephoned Yardley, and later came to her home for a visit. Yardley vaguely remembered Pastor Colliflower's home visit. Yardley recalled Pastor Colliflower telling her that she needed counseling twice a week. (1996 Yardley Depo., 83.)
 {¶ 4} Yardley went to St. Luke's for a one-on-one counseling session with Pastor Colliflower. Yardley needed counseling to help cope with the responsibilities of caring for her six-year-old son who suffered from congenital physical medical problems, her alcoholism, her recent divorce in which she lost custody of her son, alienation from her family, and issues of rape that occurred in New York and Connecticut years prior. (Amended Complaint ¶ 30.) At her first session, Yardley stated that Pastor Colliflower put his arms around her and kissed her on the lips. (Yardley Depo., 86.) Yardley left the session, feeling confused. A few days later, Yardley received a note from Pastor Colliflower stating that he had overstepped his boundaries.
 {¶ 5} On October 18, 1994, Pastor Colliflower moved Yardley into the parsonage as a means of providing Yardley with a stable environment to receive spiritual counseling, to cope with her alcoholism, and a work environment conducive for Yardley to complete her doctorate degree. During her deposition, Yardley testified that she was intoxicated when Pastor Colliflower took her to the parsonage. (Yardley Depo., 101.) Yardley testified that on the night she moved in, she told Pastor Colliflower she was experiencing hallucinations that were not the effects of her alcoholism. At that point, Pastor Colliflower climbed into the bed with Yardley, held her, caressed her, and said, "`[e]very time I say the number seven, number seven, number seven, you will have sex with me.'" (Yardley Depo., 108.) Pastor Colliflower also told Yardley that as part of her spiritual growth and relationship with him, they had to have sexual intercourse every morning. (Id. at 119.) Yardley did not complain to anyone or refuse Pastor Colliflower's sexual advances. Yardley testified that she had sex with Pastor Colliflower approximately 50 to 52 times. (Id. at 156.)
 {¶ 6} Robert Gage, Yardley's husband, became suspicious when Yardley told him she was experiencing hallucinations and was prohibited from receiving medical assistance. On October 23, 1994, Gage contacted Michael Johnson, Superintendent of the Columbus North District, and Charles Loveless, District Superintendent and Assistant to Bishop Craig, to inform them of his suspicions of inappropriate conduct by Pastor Colliflower. According to Reverend Johnson, Gage believed that Yardley was being held against her will and that Pastor Colliflower was using mind control over Yardley and the St. Luke's congregation. (Johnson Affidavit, defendants-appellees' Motion for Summary Judgment, filed April 17, 2001, Exh. B, ¶ 5.)
 {¶ 7} On October 24, 1994, Reverend Johnson requested that Pastor Colliflower come to the district office to attend a meeting. On October 26, 1994, Pastor Colliflower, along with his wife, Yardley, and Christine Schiltz, assistant to the pastor, met with Reverend Johnson. Yardley alleged she was instructed by Pastor Colliflower to tell Johnson "everything was fine." (Amended Complaint ¶ 38.) The West Ohio Conference and the Columbus North District determined that no formal investigation would be conducted. Bishop Craig announced that no official investigation would be conducted without an affidavit from Yardley.
 {¶ 8} Yardley alleged that from October 1994 through January 1995, Pastor Colliflower engaged in sexual relations with her either at the parsonage after the pastor's wife left for work and his son left for school, or at the church. Yardley alleged Pastor Colliflower used drugs, hypnosis, and psychological manipulation to gain control over her "in an extended regular regimen of sexual activity for his own gratification." (Amended Complaint ¶ 42.)
 {¶ 9} In January 1995, Yardley confronted Pastor Colliflower and his wife about the pastor's inappropriate conduct. Yardley left the parsonage sometime in January or February 1995, and reported her allegations of sexual abuse to the Columbus North District and the West Ohio Conference. Pastor Colliflower requested and was granted a leave of absence. According to Yardley, Pastor Colliflower initially denied her allegations, but later admitted to one instance of sexual intercourse with Yardley, which she initiated.
 {¶ 10} Yardley alleged that due to the psychological, spiritual, and sexual abuse she suffered, among other things, post-traumatic stress disorder, severe alcoholism, severe mental anguish, outrage, painful humiliation and embarrassment, pain and suffering, loss of trust in professional relationships and counseling, loss of trust in church and religious organizations, loss of self-confidence, incapacitating depression, extensive hospitalization, had to take psychiatric drugs, and undergo counseling, and incurred inpatient medical expenses in excess of $25,000 and damage to her reputation. (Amended Complaint ¶ 50-54.)
 {¶ 11} On April 27, 1995, Yardley filed a complaint against Colliflower for intentional infliction of serious emotional distress, and against St. Luke's, Columbus North District, and the West Ohio Conference for negligence, negligent infliction of emotional distress, and clergy malpractice for failing to intervene in Yardley's abusive ministerial counseling relationship with Colliflower.
 {¶ 12} On May 19, 1997, Colliflower filed for bankruptcy. Yardley's suit was stayed for approximately one year during the pendency of the bankruptcy proceedings. After the bankruptcy proceedings were reactivated, Yardley entered into a settlement agreement with St. Luke's and, on July 7, 1998, the trial court granted Columbus North District and West Ohio Conference's motion for summary judgment. However, Yardley voluntarily dismissed the action before entry of final judgment.
 {¶ 13} On October 26, 1998, Yardley refiled her complaint against the West Ohio Conference, Columbus North District, and Colliflower. Yardley died on May 22, 1999. On June 4, 1999, Yardley's counsel filed a suggestion of death pursuant to Civ.R. 25. On September 2, 1999, Stewart filed a motion in the name of the estate requesting that he be substituted as the plaintiff in the pending action. The probate court filed an entry on September 2, 1999, appointing Stewart as special administrator with the power to fully administer Yardley's estate. On June 17, 1999, West Ohio Conference and Columbus North District opposed substitution asserting that Yardley's heirs were the survivors in the action, and that Stewart was not a real party in interest and lacked standing because Yardley's estate closed on June 17, 1999.
 {¶ 14} On October 27, 1999, Stewart, as special administrator, filed a wrongful death action against West Ohio Conference, Columbus North District, and Colliflower alleging Yardley died as a result of Colliflower's willful and malicious acts and West Ohio Conference's and Columbus North District's negligence. On October 29, 1999, the trial court denied Stewart's motion to substitute. On November 10, 1999, West Ohio Conference and Columbus North District filed a motion to consolidate the survival and wrongful death actions, which was granted by the trial court on January 13, 2000. Also on January 13, 2000, the trial court journalized an entry denying Stewart's motion to substitute and dismissed the survival and wrongful death actions. Stewart timely appealed, and on August 29, 2000, this court reversed and remanded finding that Stewart was the "proper" party and "real party in interest" in the survival action, and that Stewart was entitled to bring the wrongful death action in his name and capacity as special administrator. Yardley v. W. Ohio Conference of the United Methodist Church, Inc. (2000),138 Ohio App.3d 872.
 {¶ 15} On remand, the trial court considered cross-motions for summary judgment filed by West Ohio Conference, Columbus North District, and the estate of Yardley. On August 27, 2001, the trial court granted the joint motion of West Ohio Conference and Columbus North District for summary judgment and denied Stewart's motion. The claims of intentional infliction of emotional distress and wrongful death against Colliflower proceeded to jury trial.
 {¶ 16} On February 15, 2002, Colliflower was found not liable on the claim of wrongful death, but liable for intentional infliction of emotional distress. The estate of Yardley was awarded compensatory damages in the amount of $373,305.50 and punitive damages in the amount of $10 million, plus attorney fees. The matter of attorney fees was referred to a magistrate who recommended $130,656.92. The trial court adopted the magistrate's decision on August 7, 2002.
 {¶ 17} Colliflower appealed. Stewart filed a cross-appeal to Colliflower's appeal and also appealed the trial court's decision rendering summary judgment in favor of West Ohio Conference and Columbus North District, assigning the following assignments of error in case Nos. 02AP-982 and 02AP-983:[3]
 {¶ 18} "I. The trial court erred in granting, in its decision of August 27, 2001, summary judgment to defendants West Ohio Conference and Columbus North District (and in its decision of July 22, 2002 denying reconsideration of that decision) in the face of evidence, in the form prescribed by Civ.R. 56, upon which a jury could reasonably find liability on the part of these defendants to plaintiff-appellant.
 {¶ 19} "II. The trial court erred in its decision of August 27, 2001, granting summary judgment to defendants West Ohio Conference and Columbus North District (and in its decision of July 22, 2002 denying reconsideration of that decision) in ruling @ pp. 15-16, as a matter of law, that plaintiff offered insufficient evidence that the harm to plaintiff, both in terms of serious emotional distress while she survived and her death after prolonged post traumatic stress disorder and major depression, was foreseeable in the circumstances of this case. It further erred in finding that `Yardley and Colliflower were engaged in a sexual relationship that both participants actively hid from these defendants,' in the face of the evidence of control exercised over Yardley by Colliflower and the findings of fact, by the US Bankruptcy Court that Colliflower had willfully and maliciously injured Yardley, Debora A. Yardley v. Stephen V. Colliflower, Adversary Proceeding No. 97-0132, unreported, United States Bankruptcy Court Southern District of Ohio, Feb. 6, 1998). It further erred in ruling, as a matter of law, that the failure of defendants to intervene would not have removed the conditions by which Colliflower was able to victimize Yardley. Ohio Jury Instructions, Negligent Infliction of Serious Emotional Distress and Probable Cause.
 {¶ 20} "III. The trial court erred in its decision of August 27, 2001, granting summary judgment to defendants West Ohio Conference and Columbus North District (and in its decision of July 22, 2002 denying reconsideration of that decision) on plaintiff-appellant's wrongful death claim, inasmuch as plaintiff-appellant submitted expert affidavits sufficient to create an issue of material fact as to the negligence of the defendants as being a proximate cause of her death on May 22, 1999; and defendants offered no expert affidavits to the contrary.
 {¶ 21} "IV. The trial court erred in failing to find in its decision of August 27, 2001, that because defendants did not offer any opposing clergy expert testimony on the established standard of care in the Columbus community and defendants conformance thereto, plaintiff was entitled to summary judgment on the claim of clergy malpractice for absence of opposing affidavits to establish a genuine issue of material fact regarding whether the West Ohio Conference and Columbus North District breached a duty of care owed to Debora Yardley. Hoffman v. Davidson (1987), 31 Ohio St.3d 60.
 {¶ 22} "V. The trial court erred in summarily dismissing, at p. 21 of its decision of August 27, 2001, plaintiff-appellant's claim for abuse of process, particularly in regard to the unexplained failure of counsel for defendant West Ohio Conference to produce material evidence relating to videotaped materials used by the defendant in training ministers in sexual ethics in the ministry, in accordance with a court order. Ward v. Hester (1972), 32 Ohio App.2d 121."
 {¶ 23} Appellant's five assignments of error are interrelated, and, as such, we will address them together. Appellant contends that summary judgment was improperly granted. Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 {¶ 24} "* * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
 {¶ 25} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 26} Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. [See Dresher; Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41-42.]
 {¶ 27} Appellant contends that the trial court erred in granting appellees' motion for summary judgment where evidence was presented to support appellant's claims of negligence, negligent infliction of emotional distress, clergy malpractice, wrongful death, and abuse of process. Appellant argues that material evidence exists in the record, which supports the allegations against appellees.
 {¶ 28} First, on the claim of negligence, appellant asserts that appellees permitted the relationship between Colliflower and Yardley to continue, and failed to supervise, investigate and monitor the situation. In order to prevail on the theory of negligence, a plaintiff must demonstrate the existence of a legal duty, a breach of that legal duty, and an injury proximately caused from that breach. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. A duty owed to the plaintiff is fundamental to establishing actionable negligence. Id. at 142. If there is no duty, then no legal liability can arise. Id. In order to defeat a properly supported motion for summary judgment brought in a negligence action, the plaintiff must come forward with sufficient evidence to allow reasonable minds to infer that the duty was breached, and that the breach of that duty was the proximate cause of the plaintiff's injuries.
 {¶ 29} Based on the record before us, we cannot find appellees liable on the theory of negligence for Yardley's injuries. Appellant has failed to set forth any evidence that appellees had actual or constructive knowledge of Pastor Colliflower's conduct. At the time Gage approached Reverend Johnson about his suspicions, Reverend Johnson scheduled a meeting in order to investigate the matter. Yardley assured Reverend Johnson that she was fine. Reverend Johnson further noted that neither Yardley, nor members of the congregation, appeared to be in a hypnotic or mind controlled state. (Johnson affidavit ¶ 8.) It was not until February 1995, when Yardley moved out of the parsonage, that Reverend Johnson became aware of allegations of sexual abuse. At that point, Reverend Johnson immediately contacted Bishop Craig. Yardley admitted in her deposition that she did not inform anyone of the alleged sexual abuse or conduct until February 1995. (Yardley Depo., 181.)
 {¶ 30} Furthermore, appellees were not negligent in failing to supervise, monitor, direct, or control Pastor Colliflower in his counseling relationship with Yardley. Appellees presented evidence that there existed no employment relationship with Pastor Colliflower. Pastor Colliflower is a local church pastor. Pastor Colliflower was compensated for his services through St. Luke's, not through the West Ohio Conference and Columbus North District. Appellant failed to present any evidence of an employment relationship.
 {¶ 31} Finally, appellant contends that appellees were negligent in retaining Pastor Colliflower after learning that Pastor Colliflower was receiving psychological counseling and taking psychiatric drugs for clinical depression. (Amended Complaint ¶ 58[e].) In order to prevail on a claim for negligent retention, appellant must establish:
 {¶ 32} "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69; Essig v. Sara Lane Corp. (Aug. 1, 2000), Franklin App. No. 99AP-1432.
 {¶ 33} Appellant has failed to satisfy the first, second, third, and fifth elements with regard to a claim for negligent retention of Pastor Colliflower. As previously discussed, appellant has failed to present evidence of the existence of any employment relationship between Pastor Colliflower and appellees. Appellant has further failed to present evidence that Pastor Colliflower's admission of depression interfered with or affected his ministry duties at St. Luke's. During her deposition, Bishop Craig stated that Pastor Colliflower's admission of depression does not call for action by the superintendent unless his depression was "perceived by the congregation or the pastor as to be a major interference with the ministry of the congregation." (1995 Craig Depo., 55.) Furthermore, appellant failed to set forth any evidence that appellees had knowledge of Pastor Colliflower's incompetence. As such, appellant's argument lacks merit and the trial court did not err in granting appellees' motion for summary judgment on appellant's negligence claim.
 {¶ 34} Appellant has also alleged that Yardley suffered "great and extreme emotional distress" as a result of the "psychological, spiritual and sexual abuse" she experienced at the hands of Pastor Colliflower. (Amended Complaint at ¶ 54.) Appellant asserted a claim of negligent infliction of emotional distress against appellees. In Paugh v. Hanks (1983), 6 Ohio St.3d 72, paragraph 3b of the syllabus, the Ohio Supreme Court held:
 {¶ 35} "The factors to be considered in order to determine whether a negligently inflicted emotional injury was reasonably foreseeable include: (1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."
 {¶ 36} Under Ohio law, appellant is barred from recovery. We have no doubt that Yardley's emotional injuries were real, however, the record does not demonstrate that Yardley's injuries were reasonably foreseeable by appellees. By Yardley's own admission, her sexual encounters with Pastor Colliflower were consensual and unknown to the West Ohio Conference and the Columbus North District. Furthermore, the facts of this case do not establish that Yardley was a bystander located near the scene of an accident, who suffered contemporaneous emotional distress as a result of observing an accident. For the reason set forth above, we find that the trial court did not err in granting appellees' motion for summary judgment on appellant's claim of negligent infliction of emotional distress.
 {¶ 37} Third, appellant maintained that appellees were liable for clergy malpractice. Clergy malpractice is defined as "the failure to exercise the degree of care and skill normally exercised by members of the clergy in carrying out their professional duties." Byrd v. Faber (1991), 57 Ohio St.3d 56, 57. The Ohio Supreme Court held in Strock v. Pressnell (1988), 38 Ohio St.3d 207, 212, that in order to generate a cause of action for clergy malpractice, the cleric's behavior must "fall outside the scope of other recognized torts." Therefore, if the cleric's behavior fits within an established category of liability, such as fraud, duress, assault, or battery, it would be redundant to simultaneously hold the cleric liable for clergy malpractice. In order "`[t]o avoid a redundant remedy * * * any functional theory of clergy malpractice needs [to] address incidents of the clergy-communicant relationship not already actionable.'" Id., citing, Hester v. Barnett (Mo.App. 1987), 723 S.W.2d 544, 551.
 {¶ 38} In this case, Yardley essentially alleges that Pastor Colliflower used "pseudo spiritual and religious precepts" to persuade her to subject herself to his control and engage in sexual conduct. (Amended Complaint at ¶ 76.) Similar to the plaintiff in Faber, appellant's claim for clergy malpractice did not address any aspect of the clergy-communicant relationship not already actionable. Appellant has failed to name any activity engaged in by Pastor Colliflower for which recovery in tort is not available. For his actions, Pastor Colliflower could be found liable for intentional infliction of emotional distress, battery, fraud, etc. In fact, on February 15, 2002, a jury found Pastor Colliflower liable for intentional infliction of emotional distress and awarded the estate of Yardley $373,305.50 in compensatory damages, and $10 million in punitive damages. To allow recovery for clergy malpractice on the basis of this same conduct would be to grant a redundant remedy. Faber, at 58. Therefore, there is no basis for recognizing appellant's claim for clergy malpractice against Pastor Colliflower or through the doctrine of respondeat superior, against the appellees. The trial court did not err in granting appellees' motion for summary judgment.
 {¶ 39} Fourth, in the wrongful death complaint, appellant alleges that Yardley died as a result of the negligence of appellees. R.C.2125.01(A)(1) provides a civil remedy to eligible persons when a death is "caused by wrongful act." The elements of a wrongful death claim are:
 {¶ 40} "(1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." Littleton v. Good Samaritan Hosp. Health Ctr. (1988), 39 Ohio St.3d 86, 92, citing Bennison v. Stillpass Transit Co. (1966), 5 Ohio St.2d 122, paragraph one of the syllabus.
 {¶ 41} In this case, three and one-half years after the alleged negligence, Yardley died from cirrhosis of the liver, secondary to acute alcoholism. Appellant presented the affidavit of Marsha Driscoll, Ph.D., a professional psychologist. Dr. Driscoll examined Yardley before and after the alleged sexual abuse at St. Luke's. Dr. Driscoll opined that the pain and suffering Yardley endured and the risk of death was a foreseeable consequence of permitting Yardley to continue counseling with Pastor Colliflower. (Driscoll Affidavit, ¶ 26.) The trial court determined that, as a psychologist, Dr. Driscoll was not qualified to opine that Yardley died as a result of her sexual relationship with Pastor Colliflower. Appellees cannot be held liable for the death of Yardley, as there was no evidence presented that appellees had actual or constructive knowledge of the alleged sexual abuse requiring the West Ohio Conference and the Columbus North District to intervene and prevent the conduct from occurring. Appellant has failed to present any evidence that the conduct of the West Ohio Conference or the Columbus North District caused Yardley's death. As such, the trial court properly granted appellees' motion for summary judgment.
 {¶ 42} Lastly, appellant asserted in the wrongful death complaint a claim of abuse of process against appellees. Appellant specifically contends that appellees failed to comply with the production of sexual ethics training materials. The elements of a claim for abuse of process are:
 {¶ 43} "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, paragraph one of the syllabus.
 {¶ 44} Appellant failed to present sufficient evidence to support the claim for abuse of process. The record is devoid of any evidence that the consolidated survivor and wrongful death proceedings were "perverted to attempt to accomplish an ulterior purpose for which it was not designed." Additionally, appellant had not demonstrated what damage resulted from the failure to turn over the materials. Furthermore, a comprehensive review of the record reveals that appellees did turn over the requested documents for production. Therefore, appellant has failed to raise a genuine issue of material fact with regard to this claim.
 {¶ 45} Based on the foregoing, we conclude that there is no genuine issue of material fact, and that appellees are entitled to judgment as a matter of law upon appellant's negligence, negligent infliction of emotional distress, clergy malpractice, wrongful death, and abuse of process claims. As such, we hold that summary judgment was properly rendered in appellees' favor upon these claims.
 {¶ 46} For the abovementioned reasons, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
[1] Assigned on appeal case Nos. 02AP-982 and 02AP-983.
[2] Assigned on appeal case Nos. 02AP-974 and 02AP-975.
[3] On September 25, 2002, we sua sponte consolidated the appeals for the purposes of record filing, briefing, and oral argument.