BENNISON, ADMX., APPELLANT, *v.* STILLPASS TRANSIT CO., INC., APPELLEE.

[Cite as Bennison, Admx., v. Stillpass Transit Co., 5 Ohio St. 2d 122.]

(No. 39188—Decided February 16, 1966.)

124

*Mr. B. Wm. Heidkamp, Mr. Norris L. Ganson* and *Mr. Lawrence Drahman,* for appellant.

*Messrs. McIntosh & McIntosh* and *Mr. Robert G. McIntosh,* for appellee.

O'NEILL, J.  The first issue which this court must decide is whether there was any showing of negligence on the part of defendant which proximately caused the death of plaintiff's decedent.

To maintain an action for damages for wrongful death upon the theory of negligence, plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, *i. e.*, the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death. *Baier v. Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391.

Plaintiff claims that defendant failed to exercise due care in that it sent to Ford Motor Company a tank in a dangerous condition, *i. e.*, one containing explosive vapors, predicating her claim on the theory of negligent performance of a contractual obligation.

The trial court properly rejected evidence pertaining to the contract.

The duty under the contract, as shown according to the proffered testimony, was to send a tank which was "clean" so that transmission oil could be stored in it. Plaintiff's decedent could not claim protection under such contract. He was entitled only to the protection afforded generally by the exercise of due care on the part of defendant.

Plaintiff has misconceived the difference between negligence and mere breach of contract. The case of *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, cited by plaintiff as controlling, does not support her contention. In that case, it was evident that the purpose of the contract was to provide maintenance of the elevator so that it would be safe for use by anyone. The act of negligence was not merely the breach of contract, but the failure to perform the duty owed *both to the other party to the contract and to anyone else properly using the elevator.*

Likewise, the case of *Pennsylvania Rd. Co.* v. *Snyder* (1896), 55 Ohio St. 342, is inapposite. In order for the plaintiff to recover it would be necessary to determine that the gasoline vapors in the tank constituted a "defective condition" discoverable by defendant and that the delivery of the tank constituted an assurance by defendant that it could be safely handled by Ford's employees.

In the first place, it can not be said that the gasoline vapors in the tank constituted a "defective condition." It is a matter of judicial notice that gasoline is a common substance in use at

all times on our streets and highways, that vehicles travel with full, half-full and, at times, nearly empty gasoline tanks, and that when confined in proper containers gasoline is not inherently dangerous. It is also a matter of judicial notice that gasoline, being a combustible substance, gives off explosive vapors. A finding that this constitutes a "defective condition" would make all drivers of gasoline-powered motor vehicles chargeable with negligence. *Dahl* v. *Valley Dredging Co.* (1914), 125 Minn. 90, 95, 145 N. W. 796.

The case of *Mudrich, a Minor,* v. *Standard Oil Co.* (1950), 153 Ohio St. 31, is not applicable to the instant case, since that case involved a breach of the duty owed to the general public, including plaintiff, and not merely the breach of the duty owed to a particular individual under a contract. There, defendant's employee, a gasoline tank truck driver, in making a delivery of gasoline at a gasoline service station, spilled gasoline on the premises and drove away without attempting to clean it up. It was lighted by one of two small children, one of whom was injured in attempting to extinguish the blaze. The major issue in that case was not the negligence of the employee of defendant, but the foreseeability of harm to the particular plaintiff. The court held on the facts of that case that there was a jury question as to foreseeability, indicating that if the case had involved older persons the harm might not have been foreseeable, and that the same acts by older persons might have been an intervening cause. The opinion did not indicate that the mere carrying of gasoline in the tank created a risk of harm or that it would constitute a "defective condition," which is essentially plaintiff's position here.

Here, in order to substantiate a finding of negligence, there must be more than a showing that the tank which was sent to Ford contained gasoline fumes and gasoline.

Even if the sending of such tank was negligence, such negligence must have proximately caused the death. There must be no efficient intervening cause, *i. e.*, the intervention of "another conscious and responsible agency which could or should have eliminated the hazard" between the agency creating a hazard and the injury. *Thrash, a Minor,* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465. In the instant case, Ford accepted the

tank, knowing that it contained vapors, and began cleaning it out. Ford had possession and control of the tank and had knowledge of the claimed defect. It attempted to correct such claimed defect and it was at this point that the explosion occurred. Ford might well have refused the tank until Stillpass had made it fit. But having accepted the tank, Ford's attempt to remedy the claimed defect relieved Stillpass of any responsibility which it might have had. *Hurt* v. *Charles J. Rogers Transportation Co.* (1955), 164 Ohio St., 323, 328.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS, SCHNEIDER and BROWN, JJ., concur.
TAFT, C. J., and HERBERT, J., dissent.

TAFT, C. J., dissenting. Ford ordered a clean tank from Stillpass. Such a tank would not have been explosive. Stillpass delivered to Ford a tank containing explosive vapors. (A Ford employee testified that a meter test of the explosion potential of the tank disclosed one of its three compartments to be 100% explosive.)

In my opinion, a jury could reasonably find and perhaps should be directed to find that the explosive character of the tank represented a defect. The tank furnished certainly contained elements of hazard excluded by the terms of Ford's order for a clean tank.

There is evidence that Stillpass knew of this defect before it delivered the tank and that it knew how to clean the tank so as to eliminate such a defect. Also, the jury would be justified in inferring that Stillpass knew of the hazard involved in a tank containing such explosive vapors. Thus, the jury could reasonably infer that Stillpass was negligent in failing to eliminate that defect.

Obviously, the explosive character of the tank quite promptly caused the explosion that caused plaintiff's death. Our decisions in *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio

St. 31, 139 N. E. 2d 10 (see paragraph two of syllabus) ; *Pennsylvania Rd. Co.* v. *Snyder* (1896), 55 Ohio St. 342, 45 N. E. 559, 60 Am. St. Rep. 700 (see paragraphs one and two of syllabus) ; *Thrash, a Minor,* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465, 110 N. E. 2d 419 (see paragraph four of syllabus relating to holding Spot Motor Company liable) ; and *Mudrich, a Minor,* v. *Standard Oil Co.* (1950), 153 Ohio St. 31, 90 N. E. 2d 859 (see also *Hiell* v. *Golco Oil Co.* [1940], 137 Ohio St. 180, 28 N. E. 2d 561) ; would seem to require submission of plaintiff's case to the jury unless the evidence is such as to require the conclusion as a matter of law that what Ford did represented "another conscious and responsible agency which could or should have eliminated the hazard" involved in the explosive character of the tank.

In my opinion, it is not. There was proffered evidence that the president of Stillpass was told that Ford "was not willing to accept the truck in the condition in which it arrived" and that he "asked that Ford * * * undertake to clean the truck * * * and then described the method which Stillpass uses to purge gasoline fumes from their tanks, by compressed air." Ford was only getting ready to begin to do this when the explosion occurred. Thus, the jury could reasonably find from the evidence that Ford did nothing which could even have contributed to the explosion.

It is suggested that Ford should have refused the dangerous tank. If it had done so and the tank had exploded on the way back to Stillpass, Ford might have been involved in claims (even though perhaps without merit) for damages against it. Thus, the jury would be fully justified in finding that Ford exercised ordinary care and was not negligent in accepting the tank, even though it knew of its dangerous condition and had started to get ready to do what Stillpass told it to do in order to eliminate the danger. Cf. *Hurt* v. *Charles J. Rogers Transportation Co.* (1955), 164 Ohio St. 323, 130 N. E. 2d 824, where the common carrier could more readily have eliminated the hazard caused by the manufacturer. Cf. also *Thrash* v. *U-Drive-It Co., supra,* where the U-Drive-It Company could reasonably rely upon Spot Motor Company to inspect the vehicle sold and eliminate the defect in it before reselling it since Spot

Motor Company was and U-Drive-It was not a dealer regularly selling automobiles. (Stillpass was in the business of supplying tanks—Ford was not.)

HERBERT, J., concurs in the foregoing dissenting opinion.

HERBERT, J., dissenting. The principle of *res ispa loquitur* may well apply to the case at bar.

*Hiell* v. *Golco Oil Co.*, 137 Ohio St. 180, in the syllabus has this to say:

"The principle of *res ipsa loquitur* is applicable when a customer exercising due care is injured by an unexplained explosion at a filling station where gasolines are being blended under the exclusive management and control of the owner."

The second paragraph of the syllabus in *Fink* v. *New York Central Rd. Co.* (1944), 144 Ohio St. 1, is in this language:

"2. In Ohio the rule of *res ipsa loquitur* is not a rule of substantive law but is a rule of evidence which permits the jury, *but not the court in a jury trial,* to draw an *inference* of negligence where the instrumentality causing the injury was under the exclusive management and control of the defendant and the accident occurred under such circumstancs that in the ordinary course of events it would not have occurred if ordinary care had been observed. (*Glowacki, a Minor,* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St. 451, approved and followed.)"

At the time of the explosion, the dangerous instrumentality was under the exclusive management and control of either Stillpass or Ford, or both. That question would be for the jury, although it may be urged that, as a matter of law, Ford exercised no control over the tank at the time of the explosion, as it was then following specific instructions given by Stillpass to Ford.

We cannot see eye to eye with the majority opinion in respect to the elements necessary to create an independent intervening agency in the case at bar. It must be shown that the intervening agency was the cause of the death of Mr. Bennison. The majority opinion finds that Ford was not negligent

in its efforts to eliminate the hazard created and put in motion by Stillpass, hence, it could not be an intervening agency under the principles of law established in Ohio.

39 Ohio Jurisprudence 545, Section 39, reads:

"* * * Events of causative influence may intervene between the initial act and the final result, *without displacing the initial act from the position of proximate cause,* if the intermediate events themselves were natural sequences of the initial act. * * *" (Emphasis added.)

At page 542, Section 37, of the same volume, it is said that:

"The causal connection between the defendant's negligence and the plaintiff's injuries may be broken by an intervening cause. The general rule is that if a new and independent force, acting in and of itself, *intervenes, causing an injury, it will be regarded as the proximate cause.* The intervention of such independent *and efficient cause* breaks the chain of causal connection. However, to relieve a person from the consequences of his negligence, it is not enough that the negligent act or omission of another was nearest in the order of events to the injury, nor that without it the injury would not have occurred; to have this effect *it must have been the efficient, independent, and self-producing cause,* disconnected from the negligence of the first person. For a cause to be *an efficient intervening cause,* it must be one, not brought into operation by the original wrongful act, *but operating entirely independent thereof;* it must be such a cause as would have produced the result without the cooperation of the original wrong. * * *" (Emphasis added.) See *Thrash, a Minor, v. U-Drive-It Co.; Spot Motor Co.,* 158 Ohio St. 465; *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050; *Hurt* v. *Charles J. Rogers Transportation Co.,* 164 Ohio St. 323; *Neff Lumber Co.* v. *First National Bank of St. Clairsville, Admr.,* 122 Ohio St. 302; *Mouse* v. *Central Savings & Trust Co.,* 120 Ohio St. 599; *Mudrich, a Minor, v. Standard Oil Co.,* 153 Ohio St. 31; 39 Ohio Jurisprudence 2d 544, Section 39; and last but not least the famous squibb case, *Scott, an Infant,* v. *Shepherd, an Infant,* 95 Eng. Rep. K. B. Book 24, 1124.

The dependents of the decedent brought this action through their representative against the Stillpass Transit Company alone. This procedure was proper.

Paragraph three of the syllabus in *Larson* v. *Cleveland Ry. Co.*, 142 Ohio St. 20, reads:

"Where a person is wrongfully injured at the hands of two or more persons acting in concert, or acting independently but concurrently in causing a single injury, each of the wrongdoers is severally liable to such person for the full amount of the damage occasioned thereby; and the person injured may enforce his claim therefor in an action against all of them jointly, any one of them severally, or any number of them less than the whole."

The judgment of the Court of Appeals should be reversed and the cause remanded to the Court of Common Pleas for a trial by a court and *jury*.