**AETNA INSURANCE COMPANY, American Casualty Company, Atlas Assurance Co., Ltd., Centennial Insurance Co., Federal Insurance Company, Fireman's Fund Insurance Co., Great American Insurance Co., Insurance Company of North America, Phoenix Insurance Co., Royal Exchange Assurance Co., and United States Fire Insurance Co., Plaintiffs-Appellants,**

v.

**LOVELAND GAS & ELECTRIC COMPANY, Defendant-Appellee.**

No. 16650.

United States Court of Appeals
Sixth Circuit.

Dec. 8, 1966.

James L. O'Connell, Cincinnati, Ohio (Lindhorst & Dreidame, Cincinnati, Ohio, on the brief), for appellants.

James E. Kimpel, Cincinnati, Ohio (Barbour, Kimpel & Allen, Kenneth R. Hughes, Cincinnati, Ohio, on the brief), for appellee.

Before WEICK, Chief Judge, O'SULLIVAN and PHILLIPS, Circuit Judges.

WEICK, Chief Judge.

Eleven insurance companies brought suit in the District Court against the Gas Company to recover, by way of subrogation, payments made by them to their insured under fire insurance policies, for damages to his building resulting from an explosion and fire of liquified petroleum customarily known as propane gas, which emanated from a cylinder or tank supplied by the Gas Company to a tenant of the insured property owner. Jurisdiction was based on diversity of citizenship.

The complaint charged negligence against the Gas Company in furnishing to the tenant a cylinder which was supposed to be empty but which in fact contained some propane gas, in failing to give adequate warning of the danger, and in failing to respond to a call for assistance.

The Gas Company filed a motion for summary judgment. In his consideration of the motion, the District Judge had before him stipulations as to certain facts and depositions of witnesses, including officers of the Gas Company, and the tenant. The case was governed by the law of Ohio, Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937).

The District Judge granted the motion for summary judgment and dismissed the complaint. The ground for his rul-

ing was that on the uncontroverted evidence there was an efficient cause intervening between the alleged negligence of the Gas Company and the occurrence, namely, the conduct of the tenant which operated to break the chain of causation and to absolve the Gas Company. The conduct of the tenant consisted of opening the valve on the cylinder and neglecting to shut it off, thereby permitting the liquified petroleum to flow therefrom into the building where it was ignited by a boiler. The District Judge relied on the decision of the Supreme Court of Ohio in Hurt v. Rogers Transportation Co., 164 Ohio St. 323, 130 N.E.2d 824 (1955), which followed Thrash, a Minor v. U-Drive-It Co., 158 Ohio St. 465, 110 N.E. 2d 419 (1953).

It is the contention of the insurance companies that there was a genuine issue as to the material facts and that it was error for the Court to grant the motion for summary judgment. Rule 56, Fed.R. Civ.P.; Gunn v. International Harvester Co., 366 F.2d 349 (6th Cir. 1966); Weber v. Schlemmer, 365 F.2d 323 (6th Cir. 1966); Rogers v. Peabody Coal Co., 342 F.2d 749 (6th Cir. 1965); S. J. Groves & Sons v. Ohio Turnpike Comm'n, 315 F.2d 235 (6th Cir. 1963), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57. This contention requires a consideration of the evidence.

■■■ The insurance companies, as subrogees, stand in the shoes of their subrogor, the insured owner of the building. In order to recover from the Gas Company they must establish not only negligence but also that the damage to the building proximately resulted therefrom.

The tenant was a corporation, engaged in the manufacturing business. The Gas Company was engaged in the retail sale of bottled gas, furniture and appliances. The bottled gas is maintained under pressure in order to keep it in a liquid state.

Bradford Phillips, president of the tenant, had observed some cylinders or tanks on the property of the Gas Company, which he believed had been discarded,

and he desired to obtain one of them. He intended to have the bottom of it cut off with a blow torch and to use the cylinder in experimenting with latex. Phillips advised Karl Brown, president of the Gas Company of his needs and Brown agreed to supply a discarded cylinder to Phillips, gratis.

The testimony of Brown and Phillips was in conflict as to many other details. Brown testified that he told Phillips that he had a discarded tank which had no valve and hadn't had any gas in it for two years and that it would have to be steam cleaned; that the Gas Company had no steam cleaning equipment, but its employees would deliver the tank to Phillips' plant and would steam clean it with his equipment.

Phillips' testimony was to the effect that he told Brown that he had seen a tank in the Gas Company's yard, which was about the size that he wanted, and Brown told him it would be all right for him to pick it up. Phillips indicated that he was "concerned about the residual gas in the tank" and asked Brown how to get rid of it. Brown replied, "Don't worry. You can kill gas with steam."

Some time later Phillips and one of his employees drove to the yard of the Gas Company and picked out a cylinder and had it delivered by truck to their plant. Neither Brown nor any of the Gas Company's employees was present at the time and did not know which cylinder had been selected and removed.

The cylinder which Phillips removed weighed about four hundred pounds and had a capacity of seventy gallons. It was equipped with a valve. It had not been discarded. It had a value of $112.

The tenant's employees placed the cylinder in a horizontal position on the ground outside of the building occupied by tenant and about ten or fifteen feet away therefrom. The front or valve end of the cylinder pointed toward the building. An employee named Fisher was told by his superior that the cylinder was empty and that he should take the valve out and put steam in the cylinder for an

hour or more before cutting off the bottom of it with a blow torch.

Fisher was a licensed stationary engineer with twenty-five years' experience. Fisher testified, "I was leery because I am afraid of gas. And I said I don't like to burn on gas tanks." Fisher then took a wrench and unscrewed the valve on the cylinder until it was loose in his hands. He observe "There was stuff seeping out of it, and I thought, well that will quit." He walked away and another employee told him not to "fool with the tank. They are coming down to take care of it." When asked why he did not screw the valve back on, Fisher testified:

"I don't know. I guess that's my fault there because I stated before that I done that."

Phillips and one or more of his employees talked to Brown over the telephone. One of them told Brown that the tank was leaking, although he saw only frost around the valve. No one told Brown that Fisher had unscrewed the valve on the tank and he had no knowledge of that fact. Brown told them not to touch the tank and he would send someone over to look after it. Several hours later, and before he could locate his service man, the explosion occurred.

▮ Since there is a conflict in the testimony, we must view the evidence in the light most favorable to the insurance companies. We accept Phillips' version that he was to have gratis his pick of the tanks in the Gas Company's yard, whether or not discarded, and that he, and not the Gas Company, was to clean out the tank with steam.

Assuming that the Gas Company was negligent, was there an intervening cause which relieved it from liability as a matter of law? There is no claim, and there was no proof, that the cylinder was defective in any respect. So long as the liquified petroleum was contained in the cylinder it was perfectly safe. The thing which caused the damage was the intervention of a human agency, unscrewing the valve and permitting the liquified petroleum to seep out of the tank and into the building.

▮ It is argued that Phillips thought the tank was empty and did not know that it contained liquified petroleum. But Phillips' employee Fisher knew otherwise when he unscrewed the valve and observed the liquid seeping out. All that Fisher had to do to stop the seepage was to screw the valve back on again. Fisher's knowledge is imputed to his employer, the tenant.

Subsequent to the decision of the District Court, and during pendency of the case in this Court, the Supreme Court of Ohio decided Bennison, Adm'x v. Stillpass Transit Co., 5 Ohio St.2d 122, 214 N.E.2d 213 (1966), which is very much in point. In *Bennison*, Ford Motor Co. ordered from Stillpass a tank for the purpose of storing transmission oil. Upon delivery of the tank to Ford, it was inspected by Ford employees to determine whether it was clean. The inspection revealed that the tank contained vapors of an explosive nature. There was liquid in the tank. An odor of gasoline was present. Ford employees prepared to clean out the tank. An air hose was passed up to a Ford employee on the tank, who proceeded to blow the water out of the hose, and the water flowed down over the side of the tank. An explosion occurred and the Ford employee was killed. It was not shown what caused the explosion. An action for wrongful death of the Ford employee was filed against Stillpass.

On the issue of intervening cause, Judge O'Neill, who wrote the opinion for the Court, said at pages 126–127, 214 N.E.2d at page 216:

"Even if the sending of such tank was negligence, such negligence must have proximately caused the death. There must be no efficient intervening cause, i. e., the intervention of 'another conscious and responsible agency which could or should have eliminated the hazard' between the agency creating a hazard and the injury. Thrash, a Minor v. U-Drive-It Co. (1953), 158 Ohio St. 465, 110 N.E.2d 419. In the

instant case, Ford accepted the tank, knowing that it contained vapors, and began cleaning it out. Ford had possession and control of the tank and had knowledge of the claimed defect. It attempted to correct such claimed defect and it was at this point that the explosion occurred. Ford might well have refused the tank until Stillpass had made it fit. But having accepted the tank, Ford's attempt to remedy the claimed defect relieved Stillpass of any responsibility which it might have had. Hurt v. Charles J. Rogers Transportation Co. (1955), 164 Ohio St. 323, 328, 130 N.E.2d 824."

There can be no doubt in our case that the tenant was a conscious and responsible agency which could and should have eliminated the hazard.

The case at bar is much stronger than *Bennison*. In *Bennison* the cause of the explosion was unknown. In our case we know that Fisher, the tenant's employee, opened the valve on the tank, permitting the liquified gas to flow on the ground and into the building, where it was ignited by fire from the boiler.

In *Bennison*, Ford had purchased the tank from Stillpass. The contract of purchase, proffered in evidence, required Stillpass to deliver a clean tank. In the present case the tank was donated to the tenant. He undertook to do the cleaning. Also, in the case at bar the insured property owner had entrusted the possession and control of its building to its tenant, whose conduct was the immediate cause of the explosion and fire.[1]

Under *Bennison, Hurt* and *Thrash*, the District Court was correct in determining the issue of intervening cause as a matter of law.

In his memorandum opinion, the District Judge stated that he would be reluctant to resolve the issue of negligence in favor of the insurance companies, and did not determine it because his holding on the issue of intervening cause was dispositive of the case. He did not have the benefit of *Bennison,* which also held that gasoline vapors in a tank did not constitute a "defective condition".

In *Bennison,* the Court said:

"[I]n order to substantiate a finding of negligence, there must be more than a showing that the tank which was sent to Ford contained gasoline fumes and gasoline."

■ There was no duty on the part of the Gas Company to warn the tenant of dangers which were already known to him. Greyhound Lines v. Martin, 127 Ohio St. 499, 189 N.E. 244 (1934) (2nd Syl.) The tank was in the exclusive possession and control of the tenant from the time he removed it from the yard of the Gas Company. The tenant knew that even an empty propane gas tank has some residue of gas in it which must be cleaned out by steam. The tenant's employee Fisher knew there was liquid gas in the tank because he saw it seeping out of the opened valve. He also knew of the danger in handling it.

■ In connection with the cleaning operation, the tenant's employees had placed the tank on the ground outside the building, but only ten to fifteen feet away from it. The valve or open end of the tank was pointed toward the building. In the building was a lighted boiler. By opening the valve on the tank, the tenant's employee permitted the liquid gas to flow therefrom on the ground and toward the building for a period of several hours, until it was ignited. It is on these facts that the insurance companies seek to recover damages, but not from the tenant who caused them.

■ In not responding sooner to the tenant's telephone call for assistance, the Gas Company violated no duty which it owed to the landlord. Bennison v. Stillpass Transit Co., supra. In our judgment, no negligence of the Gas Company was proven.

---

1. Courts have denied recovery to the owner of a building where his tenant's negligence or misconduct was the immediate cause of the damage. Creel v. Charleston Natural Gas Co., 51 W.Va. 129, 41 S.E. 174 (1902); Bartlett v. Boston Gaslight Co., 117 Mass. 533 (1875).

While we deem it preferable to dispose of negligence cases in plenary proceedings and not by summary judgment, here the trial court, viewing the facts in the light most favorable to the insurance companies, would have been required to direct a verdict in favor of the Gas Company if the case had gone to trial by a jury. Hence, there was no error in granting summary judgment.

Affirmed.