CHRISMAN, Admr., etc., et al.

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

2003-Ohio-4434.]

Court of Claims of Ohio.

No. 2001–08587.

Decided Aug. 12, 2003.

Mark R. Blackmer and Michael J. Johrendt, for plaintiffs.

Jim Petro, Attorney General, and Michael J. Valentine, Assistant Attorney General, for defendant.

---

EVERETT BURTON, Judge.

{¶ 1} Plaintiffs Robert L. Chrisman et al. filed this action against defendant, Ohio Department of Rehabilitation and Correction ("DRC"), asserting claims for relief in wrongful death and survivorship and seeking a declaration that the substantive provisions of R.C. Chapter 2743 are unconstitutional. The issues of liability and damages were bifurcated, and the case proceeded to trial on the issue of liability.

{¶ 2} On July 19, 1996, plaintiffs' decedent, Craig Chrisman, was killed when the bicycle he was riding was struck head-on by a motor vehicle operated by Thurman Green, who was intoxicated. Plaintiffs allege that defendant is liable in damages for the death of their son because it failed to confine Green, an inmate who was serving a term of imprisonment. Evidence submitted at trial verified that, several years earlier, Green had been arrested after he pointed a loaded firearm at a police officer who was at Green's residence investigating a domestic disturbance. Green was convicted of felonious assault on March 14, 1989, and received a definite sentence of three years' actual incarceration for the use of a gun, and an indefinite sentence of 5 to 25 years to be served consecutively for the felonious assault charge. He appealed from the judgment of the trial court, and his conviction was reversed. *State v. Green* (1989), Fayette App. No. CA89–04–006, 1989 WL 139468. On appeal, the Supreme Court of Ohio reversed the judgment of the court of appeals and reinstated the conviction. *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038. On May 19, 1991, Green was sent to the Chillicothe Correctional Institution ("CCI") to begin serving his sentence.

{¶ 3} In October 1995, a document was received at the records office at CCI that purported to be an entry from the Fayette County Court of Common Pleas reducing inmate Green's sentence on the felonious assault charge from an indefinite 5 to 25 years to a definite three years. The records office sent a letter of inquiry to the sentencing judge seeking a corrected entry, since the Ohio Revised Code did not provide for such a sentence. A subsequent document was received at the records office that declared that the felonious assault charge had been reduced to aggravated assault with a definite sentence of two years. Green was released from CCI on November 20, 1995.

{¶ 4} Nearly eight months later, Green became voluntarily intoxicated, drove his vehicle over a highway center line, and killed plaintiffs' decedent. Subsequently, the Ohio State Highway Patrol ("OSHP") began an investigation when suspicions arose that Green's release from incarceration was fraudulently ob-

tained. The investigation revealed that an individual identified as Tonya Hager [1] had drafted several documents utilizing a bakery time clock and a hand stamp to create the appearance that the papers were authentic court records. Tonya Hager admitted to the OSHP investigator that she had intercepted the letter sent to the court by the records office and was thus able to respond to defendant's inquiry and avoid detection. As a result of the investigation by the OSHP, Green was apprehended on November 3, 1996, and returned to CCI.. Green later pled guilty to aggravated vehicular homicide based on the July 19, 1996 incident involving plaintiffs' decedent and was sentenced to a definite term of five years to run consecutively to the sentence that he was already serving. Hager was subsequently convicted of forgery and obstruction of justice. Although defendant admits that Green was released prematurely under unique circumstances, defendant contends that it acted reasonably in releasing Green (citing the forgery as exculpatory evidence), and asserts that Green's negligent act of driving while intoxicated was not a foreseeable result of its act or omission. Plaintiffs argue that defendant's failure to keep Green confined constitutes negligence per se.

{¶ 5} The Supreme Court of Ohio addressed negligence per se in *Hurst v. Ohio Dept. of Rehab. & Corr.* (1995), 72 Ohio St.3d 325, 650 N.E.2d 104, stating, "We have held that 'where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se.' *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of the syllabus."

{¶ 6} In this case, defendant had a statutory duty to confine prisoners. This duty is set forth in R.C. 5145.04, which provides that DRC "shall maintain the control over prisoners committed to its custody that prevents them from committing crime * * *." Plaintiffs insist that any violation of R.C. 5145.04 constitutes negligence per se. This court disagrees. In *Hurst*, the court further explained that "where the duty is defined 'only in abstract or general terms, leaving to the [trier of fact] the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence per se has no application.' *Swoboda v. Brown* (1935), 129 Ohio St. 512, 523, 2 O.O. 516, 521, 196 N.E. 274, 279." Id. at 325, 650 N.E.2d 104.

{¶ 7} Upon review of the statute and relevant case law, the court finds that the language of R.C. 5145.04 is general in nature and that it assigns DRC the responsibility for arranging all the conditions necessary to effectuate confinement of prisoners. Moreover, the court notes that in *Bonds v. Ohio Dept. of Rehab. &*

---

1. The court is unaware of the nature of the relationship of Hager to Thurman Green.

*Corr.* (1996), 116 Ohio App.3d 144, 687 N.E.2d 300, the Tenth District Court of Appeals reviewed various statutory provisions, including R.C. 5145.04, and concluded that "none of them are duties to which the doctrine of negligence per se applies." Plaintiffs cite the cases of *Crawford v. Ohio Div. of Parole* (1991), 57 Ohio St.3d 184, 566 N.E.2d 1233, and *Reynolds v. Div. of Parole* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, in support of their position. However, those cases concern prisoners who were furloughed pursuant to R.C. 2967.26, and the circumstances involve improper supervision over prisoners who were allowed to attend work programs or other functions as a means of reintegration into the community. The court finds that the situation presented in this case is clearly distinguishable as it involves a prisoner mistakenly released incident to the criminal acts of a forger. Thus, negligence per se is not applicable in this instance.

{¶ 8} Although defendant admits that it failed to maintain control over inmate Green, defendant argues that the language in R.C. 5145.04 refers to a duty to prevent crimes being committed in the institution. Thus, defendant infers that Green's release did not violate this duty. The court is not persuaded by defendant's reasoning. Incarceration is intended to prevent the criminal from continuing a course of criminal conduct at large while concomitantly attempting to shift the focus of the inmate toward rehabilitation and eventual reintegration with society. The court finds that DRC was required pursuant to statute to confine inmates who were under its control and that defendant failed to keep inmate Green confined until such time as he was eligible to be paroled.[2] Nevertheless, the court is mindful of the various lengths to which criminals will go to effectuate escape, and defendant will not be held strictly liable for every instance of escape by prisoners, nor will the court automatically presume negligence on the part of defendant's employees. The court must determine whether DRC owed plaintiffs a duty under ordinary principles of negligence and make a judgment as to the reasonableness of defendant's acts, given the unique set of circumstances presented.

{¶ 9} To maintain a wrongful death action on a theory of negligence, plaintiffs must show three elements: a duty owed to plaintiffs' decedent, a breach of that duty, and proximate causation between the breach of duty and the death. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529

---

2. Although the parties argued their relative positions regarding the "public-duty doctrine," the court notes that the Supreme Court of Ohio has since rejected this concept as a bar to the state's liability for negligence, stating that in "negligence suits against the state, the Court of Claims must determine the existence of a legal duty using conventional tort principles * * *." See *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018.

N.E.2d 449, citing *Bennison v. Stillpass Transit Co.* (1966), 5 Ohio St.2d 122, 34 O.O.2d 254, 214 N.E.2d 213, paragraph one of the syllabus. Generally, there is no duty to control the conduct of a third person by preventing him from causing physical harm to another. *Littleton,* supra. However, an exception to this general rule arises when a special relationship exists between the actor and the third person that imposes a duty upon the actor to control the third person's conduct, or when a special relationship exists between the actor and the other that gives to the other a right to protection. Id. "Such a 'special relation' exists when one takes charge of a person who he knows or should know is likely to cause bodily harm to others if not controlled." *Littleton,* supra, 39 Ohio St.3d at 92, 529 N.E.2d 449; 2 Restatement of the Law 2d, Torts (1965), at 129, Section 319; see 2 Restatement of the Law 2d, Torts (1965), at 123, Section 315, Comment *c.*

{¶ 10} In the instant case, a special relationship existed between defendant and Green inasmuch as Green was committed to the custody of DRC pursuant to entry of the sentencing court and defendant was required to confine Green until such time as he was eligible for parole.

{¶ 11} Defendant maintains that it had no discretion when it released Green and that it was bound to follow the second purported entry pursuant to the holding of *State ex rel. Corder v. Wilson* (1991), 68 Ohio App.3d 567, 589 N.E.2d 113. Thus, defendant contends that it acted reasonably in releasing Green. The court does not find defendant's reliance on *Corder* persuasive. In *Corder,* the court determined that the Adult Parole Authority did not have the power to substitute its computation of jail-time credit in place of the sentencing court's calculation. The court ruled that "[t]he law has been and is still clear that, although the Adult Parole Authority is the body who credits the time served, it is the sentencing court who makes the determination as to the amount of time served by the prisoner before being sentenced to imprisonment in a facility under the supervision of the Adult Parole Authority." The constraint in *Corder* limits defendant's discretion in substituting its own calculation of jail-time credit for that prepared by the sentencing court. It does not absolve defendant of its responsibility to execute the sentence as imposed or to ascertain the end-of-sentence date when a prisoner is eligible for release.

{¶ 12} Likewise, defendant is not excused by *Corder* from its responsibility to verify that the communiqué purporting to authorize the immediate release of a prisoner is authentic. Defendant's employees testified, quite credibly, that they followed internal procedures and regulations upon receipt of the first purported entry. The records clerk mailed a letter of inquiry to the Fayette County court requesting that the judge revise his sentencing entry, since it did not correspond to the statutory requirements. Defendant's employees testified

that within a relatively short period of time they received a response from the court. Based upon this document, Green was eligible to be released. Upon review of the purported entries, the court finds that the documents have an appearance of authenticity that withstands initial scrutiny and that evidence of a forgery is not readily apparent. Once one is made aware of the fraud, the inaccuracies, though subtle, become more obvious. Nevertheless, despite the arguments offered by plaintiffs, the court is persuaded that DRC acted reasonably in accepting the second document that was received in response to defendant's request for further clarification.

{¶ 13} The court also finds that DRC's failure to confine inmate Green, for whatever reason, was not the proximate cause of the escaped prisoner's criminal conduct. "[T]he burden of establishing proximate cause * * * could be exceedingly difficult in cases where the governmental conduct alleged to have caused injury is particularly attenuated or exacerbated by intervening circumstances." *Wallace,* supra, at ¶ 38. Negligence in the confinement of a prisoner is not the proximate cause of an escapee's subsequent criminal activities. *Collie v. Hutson* (1985), 175 Ga.App. 672, 334 S.E.2d 13; *Moss v. Bowers* (1939), 216 N.C. 546, 5 S.E.2d 826. See, also, *Marshall v. Winston* (1990), 239 Va. 315, 389 S.E.2d 902 (acts of assaultive criminal behavior cannot reasonably be foreseen). Plaintiffs have not provided sufficient evidence to support a finding of proximate cause. To establish liability on the part of defendant, plaintiffs must prove that the harm to the decedent was foreseeable. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. The court is cognizant of the fact that criminal behavior of third parties is not predictable to any degree of certainty. In the instant matter, the death of Craig Chrisman was caused solely by Green's negligent driving exacerbated by his intoxicated condition. The court finds that the injury to Craig Chrisman was not the natural and probable consequence of Green's improper release, nor could the injury to Craig Chrisman, nearly eight months after Green's release, have been reasonably anticipated. Because plaintiffs cannot meet their burden with respect to foreseeability or proximate cause, plaintiffs cannot prevail on their claims for wrongful death and survivorship.

{¶ 14} At trial, plaintiffs referenced their third cause of action and requested that this court find portions of R.C. Chapter 2743 in violation of the Ohio Constitution. For those reasons set forth in the court's April 17, 2002 entry denying plaintiffs' motion for partial summary judgment on this issue, the court accordingly denies plaintiffs' remaining constitutional claims. In sum, plaintiffs

have failed to prove by a preponderance of the evidence their right to relief, and judgment shall be entered in favor of defendant.

{¶ 15} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

Judgment for defendant.

EVERETT BURTON, J., retired, of the Scioto County Court of Common Pleas, sitting by assignment.