[Cite as *Mehaffey v. Ohio State Univ. College of Medicine*, 2012-Ohio-6356.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ELIZABETH K. MEHAFFEY, Admx., etc., et al.

    Plaintiffs

    v.

THE OHIO STATE UNIVERSITY COLLEGE OF MEDICINE

    Defendant

Case No. 2010-01123

Judge Clark B. Weaver Sr.

<u>DECISION</u>

{¶ 1} Plaintiffs brought this action against defendant, The Ohio State University College of Medicine (OSU), alleging negligence, wrongful death, and loss of consortium based upon medical treatment provided to plaintiffs' decedent, John Mehaffey.[1] The issue for trial was limited to whether defendant breached the standard of care with respect to the medical treatment it provided to plaintiffs' decedent and the case proceeded to trial.[2]

{¶ 2} In 1999, John received a living donor kidney transplant; however, by 2008, John's serum creatinine values, a measure of kidney function, were steadily rising. On or about May 2, 2008, Jon Von Visger, M.D., a nephrologist at OSU, scheduled a renal biopsy to determine the reasons for John's decreased kidney function.

{¶ 3} On May 5, 2008, John and Elizabeth Mehaffey arrived at OSU for the scheduled procedure. They met with a member of the nursing staff and provided the staff member with an updated list of John's medications. Included in the list was a

---

[1]Plaintiffs' decedent shall be referred to as "John" throughout this decision.

medication called Plavix, a platelet inhibitor, which binds to the receptors of the platelet preventing clotting of the blood. Elizabeth testified that John had been prescribed Plavix since he suffered a stroke in 2006.

{¶ 4} As the attending physician, Dr. Von Visger met with John prior to the procedure and discussed the risks associated with a renal biopsy. According to Dr. Von Visger, such risks include bleeding and death. Dr. Von Visger admitted that he was unaware that John had taken Plavix the day prior to the surgery despite its inclusion in John's list of medications. (Plaintiff's Exhibit 3.) Dr. Von Visger further admitted that the standard of care requires that the attending physician know what medications a patient who is scheduled for a renal biopsy is taking.

{¶ 5} Dr. Von Visger classified John's renal biopsy as "urgent" rather than "emergent." Accordingly, Dr. Von Visger testified that had he known that John was taking Plavix, he would have advised John of the increased risks of the procedure and recommended that he proceed that same day. Dr. Von Visger asserted that he would not have wanted to delay the biopsy more than a few days; however, he admitted that John could have rescheduled the biopsy for a later date.

{¶ 6} Jerry Chelleni, D.O., a nephrology fellow at OSU, testified that he also met with John to obtain his consent for the renal biopsy prior to the procedure. Dr. Chelleni likewise admitted that he was unaware that John had taken Plavix the day prior to the surgery and that the standard of care requires that the physician know what medications the patient is taking prior to performing a renal biopsy.

{¶ 7} As a part of Dr. Chelleni's fellowship, he assisted Dr. Von Visger in performing John's ultrasound-guided renal biopsy. Dr. Chelleni stated that a renal biopsy on a transplant kidney, such as John's, is less complex then a biopsy on a native kidney; however, the risk of striking a vein in the kidney remains unchanged. The

---

[2]Plaintiffs' September 14, 2012 motion for leave to file a reply brief is GRANTED, instanter.

procedure is performed by using ultrasound to locate the kidney.  A biopsy needle is then inserted into the cortex of the kidney to obtain a specimen.  Ultimately, the biopsy needle struck a vein and John suffered significant bleeding during the procedure, subsequently succumbing to his injuries.[3]

{¶ 8} Plaintiffs allege that OSU's medical staff deviated from the accepted standard of care in that the medical staff was unaware that John had taken Plavix the day prior to the surgery.

{¶ 9} "In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things."  *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), paragraph one of the syllabus.

{¶ 10} "To maintain a wrongful death action on a theory of medical negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92 (1988), citing *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122 (1966), paragraph one of the syllabus.

{¶ 11} Defendant's expert, Eric Brown, M.D., a nephrologist who is board-certified in both internal medicine and nephrology, testified that the most common risk of an ultrasound-guided renal biopsy is bleeding.  Dr. Brown admitted that the standard of

---

[3]Neither Dr. Von Visger nor Dr. Chelleni recall who held the biopsy needle during the procedure.

care required that the attending physician know that a patient had taken Plavix the day prior to the procedure. Dr. Brown further asserted that a nephrologist is required to know all the medications that a patient is taking prior to performing a renal biopsy. Dr. Brown opined that the standard of care required that the physician either have a discussion with the patient about the increased risks associated with performing a renal biopsy while the patient is on Plavix or postpone the procedure until the effects of Plavix have worn off.

{¶ 12} Dr. Brown testified that he would prefer a patient stop taking Plavix ten days prior to a biopsy. Dr. Brown admitted, however, that John's renal biopsy did not have to be performed on May 5, 2008, and that there was a range of days in which the renal biopsy could be performed. Dr. Brown further admitted that the standard of care requires that the nephrologist contact the prescribing physician to determine whether it is safe to take the patient off Plavix for the renal biopsy.

{¶ 13} Plaintiff's expert, Robert Toto, M.D., a professor of internal medicine, board-certified in internal medicine and nephrology, testified that the standard of care requires that the nephrologist performing a renal biopsy review the medications the patient is taking. Dr. Toto opined that Dr. Chellini and Dr. Von Visger failed to meet the standard of care by not knowing that John had taken Plavix the day prior to the procedure. However, Dr. Toto admitted that it is not a breach of the standard of care to cause bleeding during the biopsy or to perform a biopsy while a patient is on Plavix. According to Dr. Toto, if a patient is on Plavix, the nephrologist is required to discuss the increased risk of bleeding during the procedure with the patient. Dr. Toto further opined that the standard of care requires that the nephrologist contact the prescribing physician to determine whether it is safe for the patient to stop taking Plavix. According to Dr. Toto, John's renal biopsy was an elective procedure that could have been postponed.

{¶ 14} Defendant argues that plaintiffs' medical claim is, in reality, a claim for lack of informed consent, and inasmuch as plaintiffs failed to plead lack of informed consent, they are not entitled to judgment in their favor.

{¶ 15} A medical claim premised upon the lack of informed consent requires proof that:

{¶ 16} "(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

{¶ 17} "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

{¶ 18} "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." *Nickell v. Gonzalez*, 17 Ohio St.3d 136 (1985), syllabus.

{¶ 19} The court finds that plaintiffs' claim is not a claim for lack of informed consent. Had Dr. Chellini or Dr. Von Visger been aware that John had taken Plavix the day prior to the procedure and failed to disclose the associated increased risks of the procedure, then plaintiffs would have a claim for lack of informed consent. However, it is not disputed that neither Dr. Von Visger nor Dr. Chellini knew that John had taken Plavix the day prior to the procedure. Moreover, it is not disputed that the standard of care requires that the nephrologist know what medications the patient is taking prior to performing a renal biopsy. Furthermore, the court finds that John's renal biopsy was not an "emergent" procedure. Indeed, defendant's expert acknowledged that John could have rescheduled the biopsy for another day.

{¶ 20} Additionally, the court finds that the standard of care requires the physician to contact the prescribing physician to determine whether it is safe for the patient to be

off Plavix. Finally, the court finds that the standard of care requires the physician to have a discussion with the patient of the increased risks of the procedure while on Plavix or to postpone the procedure. The court finds that neither Dr. Von Visger nor Dr. Chellini met the standard of care. Neither Dr. Von Visger nor Dr. Chellini were aware that John had taken Plavix; neither Dr. Von Visger nor Dr. Chellini contacted the prescribing physician to determine whether it was safe for John to be off Plavix for the procedure; and neither Dr. Von Visger nor Dr. Chellini discussed with John the increased risks of being on Plavix during the procedure.

{¶ 21} Based upon the foregoing the court finds that plaintiffs have proven that defendant breached the standard of care with respect to the medical treatment it provided to plaintiffs' decedent. Accordingly, judgment shall be rendered in favor of plaintiffs.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ELIZABETH K. MEHAFFEY, Admx., etc., et al.

    Plaintiffs

    v.

THE OHIO STATE UNIVERSITY COLLEGE OF MEDICINE

    Defendant

Case No. 2010-01123

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 22} This case was tried to the court on the issue of whether defendant breached the standard of care with respect to the medical treatment it provided to plaintiffs' decedent. The court has considered the evidence, and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiffs. A case management conference is set for *December 28, 2012, at 9:00 a.m.,* to discuss further proceedings. The court shall initiate the conference via telephone.

 

_____
CLARK B. WEAVER SR.
Judge

cc:

Daniel R. Forsythe
Karl W. Schedler
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Michael D. Shroge
55 Public Square, Suite 2222
Cleveland, Ohio 44113

003
Filed November 16, 2012
To S.C. Reporter March 22, 2013