[Cite as *Conner v. Wright State Univ.*, 2013-Ohio-1511.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LISA CONNER, Admr., etc., et al.

    Plaintiffs

    v.

WRIGHT STATE UNIVERSITY, et al.

    Defendants

Case No. 2012-02887

Judge Patrick M. McGrath

DECISION

{¶ 1} On April 20, 2012, defendants filed a motion for summary judgment pursuant to Civ.R. 56(B). On September 10, 2012, with leave of court, plaintiffs filed their response. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Decedent Nathan Conner was a student at Wright State University (WSU). In the fall of 2007, Nathan began his second year at WSU, living in an on-campus apartment with three roommates.

{¶ 5} On January 15, 2008, employees of WSU, including Sergeant James Facemire, Officer Jesse Harrod, and Sergeant Wyatt were dispatched to Nathan's apartment in response to an early morning call from his roommate to WSU's campus police stating that Nathan had ingested unprescribed pain medication. The officers determined that Nathan was a threat to himself and transported him to a local hospital for evaluation. After spending a week at home with his parents, Nathan returned to WSU and began counseling for bipolar disorder at WSU Counseling and Wellness Services.

{¶ 6} In the early morning hours of March 21, 2008, Officers Harrod and Oleyar were dispatched to Nathan's apartment in response to a call from his roommate stating that Nathan intended to commit suicide using a helium tank. Sergeant Facemire arrived shortly thereafter. Nathan confirmed to the officers that he had thoughts of harming himself earlier that week and that he was in possession of a helium tank; however, Nathan denied suicidal ideation at that time. After speaking with Nathan for several minutes, the officers determined that Nathan was not a threat to himself and left the apartment. Shortly after the officers left, Nathan used the helium to commit suicide by asphyxia.

{¶ 7} Plaintiffs bring claims for negligence, wrongful death, survivorship and loss of consortium.

{¶ 8} In their motion for summary judgment, defendants argue that they are immune from liability pursuant to R.C. 2743.02(A)(3). Further, defendants argue that

their actions were not the proximate cause of Nathan's death and that plaintiffs' claims are barred by primary assumption of the risk.

{¶ 9} "To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiffs' decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Little v. Good Samaritan Hosp. & Health Ctr.,* 39 Ohio St.3d 86, 92 (1988), citing *Bennison v. Stillpass Transit Co.,* 5 Ohio St.2d 122 (1966).

{¶ 10} R.C. 2743.02(A)(3)(a) states, "Except as provided in division (A)(3)(b) of this section, the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state."

{¶ 11} R.C. 2743.01(E)(1) states, "'Public duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following:

{¶ 12} "(a) Permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, *law enforcement, or emergency response activity*;

{¶ 13} "(b) Supervising, rehabilitating, or liquidating corporations or other business entities." (Emphasis added.)

{¶ 14} Defendants performed a public duty relating to law enforcement and emergency response activity on March 21, 2008. Therefore, the state is immune from liability for its actions involving its response to the call regarding Nathan's behavior unless a special relationship can be established.

{¶ 15} In order for a special relationship to exist between the state and an injured party, pursuant to R.C. 2743.02(A)(3)(b), all of the following must exist:

{¶ 16} "(i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

{¶ 17} "(ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;

{¶ 18} "(iii) Some form of direct contact between the state's agents and the injured party;

{¶ 19} "(iv) The injured party's justifiable reliance on the state's affirmative undertaking."

{¶ 20} In support of their motion for summary judgment, defendants filed the depositions of Officer Harrod and Nathan's mother, Lisa Conner. Plaintiffs filed the depositions of Sergeant James Facemire and Simone Polk.[1] Both Facemire and Harrod testified in their depositions that they were dispatched to Nathan's apartment after defendants received a telephone call from a third party stating that Nathan was threatening to harm himself with helium.

{¶ 21} The court finds that plaintiffs have arguably presented genuine issues of fact as to whether defendants assumed an affirmative duty to act, knew that their inaction could lead to harm, and directly contacted Nathan.

{¶ 22} However, defendants argue that Nathan did not want any help from the responding officers and that plaintiffs cannot establish any justifiable reliance. Plaintiffs argue that Nathan relied upon WSU to provide him with treatment and care for his psychiatric issues and that his parents justifiably relied upon WSU to protect a student from harm.

{¶ 23} Lisa Conner testified in her deposition that after spending a week at home, Nathan returned to WSU in January 2008 and entered counseling with a psychologist at WSU. Conner admitted that between January 15 and March 21, 2008, she never called either WSU police or a counselor at WSU to discuss any concerns she had that Nathan may be a danger to himself. According to Conner, Nathan was attending regular

---

[1]Plaintiffs also filed the deposition of Officer Harrod.

counseling sessions and did not manifest any signs of mental illness. Conner stated that WSU police officers should have telephoned her in the early morning hours of March 21, 2008, and related that they had responded to Nathan's apartment because of a call that Nathan may harm himself.

**{¶ 24}** Officer Harrod testified that when he responded to the dispatch call in March 2008, Nathan was relaxed and seemed to be in good spirits. However, Harrod admitted that he did learn that Nathan possessed a helium tank. According to Harrod, Nathan told him that he had thoughts of harming himself in the previous week but that he had talked to someone and felt better. Harrod explained that he did not see any evidence that Nathan was having a mental health crisis on March 21, 2008, and that he saw no signs to justify issuing Nathan a pink slip and taking him to the hospital.

**{¶ 25}** Facemire testified that he was "confident" that Nathan was not a threat to himself on March 21, 2008, even though he knew about the January incident, knew that Nathan possessed a helium tank, and had received a dispatch call from his roommate saying that Nathan intended to harm himself.[2]

**{¶ 26}** Both Facemire and Harrod testified in their depositions that they had responded to the January 15, 2008 incident involving Nathan as well as the March 21, 2008 call stating that Nathan may harm himself with helium. According to Facemire, Nathan stated that his parents owned a party store and that he intended to use the helium tank to blow up balloons for a friend. Facemire and Harrod admitted that they were aware of the previous attempt by Nathan to harm himself, but they both stated that they could not rely on Nathan's conduct on January 15, 2008, to determine if Nathan was a threat to himself on March 21, 2008.

---

[2]Attached to plaintiffs' memorandum in opposition were several unauthenticated documents and also three CDs of the dispatch calls. Inasmuch as they have not been properly authenticated, such documents will not be considered by the court.

**{¶ 27}** Based upon the foregoing, the court finds that plaintiffs did not justifiably rely upon defendants' affirmative undertaking to care for Nathan.  Indeed, the officers who responded to Nathan's apartment on March 21, 2008, both testified that unlike the January 15, 2008 incident, there were no signs that Nathan was a threat to harm himself on March 21, 2008.  Officer Harrod described Nathan as a "completely different person" during the second encounter than the person encountered on January 15, 2008.  Furthermore, Nathan provided the officers with a reasonable explanation for possession of a helium tank.  The officers exercised both reasonable care and judgment in making a decision that Nathan was not an immediate threat to himself and there is no evidence that Nathan relied upon defendants to care for him.

**{¶ 28}** Additionally, there is no evidence before the court that plaintiffs contacted either WSU police or WSU mental health counselors between January 15, 2008 and March 21, 2008, to discuss Nathan's mental health.  Accordingly, there is no genuine issue of material fact that plaintiffs justifiably relied upon defendants' affirmative acts to care for Nathan. Therefore, the court can only conclude that plaintiffs are unable to establish that a special relationship existed and that defendants are immune under the public duty rule.  R.C. 2743.02(A)(3)(a).  Accordingly, plaintiffs' claims for negligence, wrongful death, survivorship, and loss of consortium must fail.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LISA CONNER, Admr., etc., et al.

    Plaintiffs

    v.

WRIGHT STATE UNIVERSITY, et al.

    Defendants

Case No. 2012-02887

Judge Patrick M. McGrath

<u>JUDGMENT ENTRY</u>

{¶ 29} A non-oral hearing was conducted in this case upon defendants' motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendants' motion for summary judgment is GRANTED and judgment is rendered in favor of defendants. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Emily M. Simmons
Peter E. DeMarco
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Paul-Michael La Fayette
300 East Broad Street, Suite 350
Columbus, Ohio 43215

003
Filed January 8, 2013
To S.C. Reporter April 16, 2013